Tony T. Liu (SBN 226637)
J. John Oh (SBN 204925)
FOCUS LAW
4501 E. La Palma Ave., Suite 200
Anaheim, CA 92807
(714) 415-2007
tLiu@FocusLawLA.com
john@FocusLawLA.com

Attorneys for Plaintiff,
ORANGE PRODUCT DESIGN, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| ORANGE PRODUCT DESIGN, INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>DENGJU GE, an individual; GENERAL THINKTECH DESIGN LLC, a California limited liability company; and DOES 1 through 50, inclusive,<br><br>Defendants. | CASE NO.:<br><br>COMPLAINT FOR:<br><br>1. Violation of Defend Trade Secrets Act (18 U.S.C. § 1836 et seq.);<br>2. Misappropriation of Trade Secrets (Civ. Code § 3426 et seq.);<br>3. Conversion;<br>4. Breach of Duty of Loyalty;<br>5. Unfair Competition (Bus. & Prof. Code § 17200 et seq.)<br><br>ACTION SEEKING STATEWIDE OR NATIONWIDE RELIEF<br><br>DEMAND FOR JURY TRIAL |

Plaintiff ORANGE PRODUCT DESIGN, INC. ("Plaintiff") hereby alleges as follows:

**PARTIES**

1. Plaintiff ORANGE PRODUCT DESIGN, INC. is, and at all relevant times was, a California corporation with its principal place of business in Anaheim, California, engaged in the design, manufacture, and sale of brass lighting fixtures and related products.

2. Plaintiff is informed and believes and thereon alleges that Defendant DENGJU GE ("Ge") is, and at all relevant times mentioned herein was, a resident in the city of Walnut, California, in Los Angeles County.

3. Plaintiff is informed and believes and thereon alleges that Defendant GENERAL THINKTECH DESIGN ("Thinktech") is, and at all relevant times mentioned herein was, a limited

liability company formed in California which transacts business throughout California and the United States.

4. Plaintiff is further informed and believes and thereon alleges that Defendant Ge is the manager and/or member of Thinktech.

5. Defendants DOES 1 through 50, inclusive, whether individual, corporate, associate, or otherwise, are fictitious names of Defendants whose true names and capacities are, at this time, unknown to Plaintiff. Plaintiff is informed and believes and thereon alleges that, at all material times referenced herein, each of the Defendants sued herein as DOES 1 through 50, inclusive, was the agent, servant and employee of his/her/its co-Defendants, and in doing things hereinafter mentioned, was acting in the scope of his/her/its authority as such agent, servant, and employee and with the permission and consent of his/her/its co-Defendants. Each of said fictitiously named Defendants, whether agents, corporations, associations, or otherwise, is in some way liable or responsible to Plaintiff on the facts hereinafter alleged and caused injuries, losses and damages proximately thereby as hereinafter alleged. At such time as Defendants' true names become known to Plaintiff, Plaintiff will seek leave of court to amend this Complaint to insert such ascertained names and capacities.

6. Plaintiff is informed and believes and thereon alleges that, at all material times referenced herein, Defendants, and each of them, including DOES 1 through 50, inclusive, were acting as the agents, servants, and employees of each other and were acting within the full course and scope of their agency and employment and with the full knowledge and consent, either express or implied, of each of the other named Defendants.

## JURISDICTION AND VENUE

7. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 and 18 U.S.C. § 1836(c) because Plaintiff asserts a civil claim arising under the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836 et seq. This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over Plaintiff's related California-law claims because those claims form part of the same case or controversy as the federal claim.

8. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District. Plaintiff

maintained the property and Trade Secrets at issue at its facility in Anaheim, Orange County, California; Ge worked at that facility; the alleged acquisition and taking occurred there; and Plaintiff suffered resulting injury there. Orange County is within the Central District of California.

## GENERAL ALLEGATIONS

9. For approximately ten years, Plaintiff has designed, manufactured, and sold original brass lighting fixtures, principally through the Etsy online marketplace, where Plaintiff's storefront has completed more than 20,000 orders. Plaintiff's revenue exceeded $2 million in 2024 and $3 million in 2025. The Etsy platform accounts for a substantial portion of Plaintiff's revenue.

10. Plaintiff's products begin with brass components manufactured to Plaintiff's own specifications and dimensions. Many of those components are not available from ordinary suppliers in California and must be specially sourced. The components are then transformed through proprietary chemical finishing formulations and processes that Plaintiff developed over years of experimentation, producing the distinctive metal finishes that distinguish Plaintiff's products in the market.

11. Plaintiff offers its brass lighting products for sale through the Etsy online marketplace. The products and the Trade Secrets used to design, source, manufacture, finish, price, and sell those products are related to products used in, or intended for use in, interstate and/or foreign commerce. Plaintiff regularly sells and ships its products through Etsy to customers located outside California and throughout the United States. Plaintiff also sources certain specialized components and/or materials from suppliers located outside California and/or outside the United States.

### Plaintiff's Trade Secrets

12. Plaintiff owns and possesses valuable trade secrets, including without limitation: (a) the identities of, and the terms of Plaintiff's relationships with, the specialized suppliers of Plaintiff's brass components and finishing chemicals ("Supplier Information"); (b) the specifications and dimensions of Plaintiff's custom brass components, which are not generally available in the United States ("Component Specifications"); (c) Plaintiff's chemical finishing formulations, sequences, and processes ("Finishing Process"); and (d) Plaintiff's product-level sales and performance data identifying which products sell and at what prices ("Sales Data") (collectively, the "Trade Secrets").

13. The Trade Secrets derive independent economic value, actual and potential, from not being generally known to the public or to other persons who can obtain economic value from their disclosure or use. The Finishing Process in particular is the difference between an ordinary commodity product and Plaintiff's distinctive, commercially successful product line, and the Component Specifications and Supplier Information cannot be obtained from public sources or ordinary domestic suppliers.

14. The Trade Secrets are, and at all relevant times were, the subject of efforts that are reasonable under the circumstances to maintain their secrecy. Among other measures, Plaintiff segregates access to the Trade Secrets on a need-to-know basis; dedicated personnel exclusively handle Supplier Information, chemical product information, and the Finishing Process; assembly personnel are not permitted access to Supplier Information, chemical product information, or surface-treatment processes; and Plaintiff maintains physical control over its components and chemicals at its Anaheim facility.

**Ge's Employment**

15. In or about November 2023, Plaintiff hired Ge as an assembly worker at Plaintiff's Anaheim facility. Ge's position gave him regular physical access to Plaintiff's brass components, production workflow, and finished products, and the opportunity to observe Plaintiff's operations from the inside.

16. Ge, however, was not allowed access to the chemical treatment process, which was carried out in a separate designated area and was handled exclusively by another employee. All chemicals were stored together in a designated cabinet. Ge was neither authorized nor permitted to access these chemicals or the chemical treatment process.

17. In addition, Ge was not authorized to access Supplier Information or the Finishing Process as an employee whose primary responsibilities were assembly, and Ge knew that access to those categories of information was restricted to designated personnel.

18. Plaintiff is informed and believes and thereon alleges that Ge obtained unauthorized access to Plaintiff's Trade Secrets, either through another employee who provided Ge access to such

information or by accessing restricted areas where such information was maintained when authorized personnel were not present.

19. As Plaintiff's employee, Ge owed Plaintiff a duty of undivided loyalty during his employment, including the duties codified at Labor Code §§ 2860 and 2863.

**Defendants' Misconduct**

20. In or about January 2024, while still employed by Plaintiff, Ge secretly contacted Plaintiff's principal brass component supplier and placed at least one order of brass lamp components for his own account and for the benefit of a planned competing business.

21. In February 2025, that supplier confirmed in writing that Ge began purchasing from it in January 2024. Plaintiff is informed and believes and thereon alleges that Ge placed additional orders with that supplier and/or other suppliers of Plaintiff while still employed by Plaintiff.

22. In or about February and March 2024, while Ge remained employed, Plaintiff discovered that quantities of brass components and finishing chemicals were missing from Plaintiff's Anaheim facility. Plaintiff is informed and believes and thereon alleges that Ge took those materials without Plaintiff's knowledge or consent for use in his planned competing business. Plaintiff's information and belief is based on, among other things, the facts alleged in this Complaint, including Ge's contemporaneous secret purchases from Plaintiff's supplier, the timing of the disappearances during Ge's employment, Ge's prompt launch of a competing store selling products requiring those same materials, and the absence of any documented source from which defendants obtained finishing chemicals before October 2024.

23. On or about March 14 and 15, 2024, Plaintiff terminated Ge's employment and paid Ge his remaining wages.

24. On April 8, 2024, less than one month after his employment ended, Ge registered Thinktech with the California Secretary of State for the stated purpose of designing and manufacturing brass lamps and other brass household products — the same business as Plaintiff's.

25. On or about April 15, 2024, one week after registering Thinktech, Ge sent Plaintiff a text message asking to return to work for Plaintiff. Ge concealed from Plaintiff that he had formed a competing company. Plaintiff did not rehire Ge.

26. On or about May 1, 2024, Defendants opened an Etsy storefront, operated under a storefront name that does not identify Ge, offering brass lighting products that are the same as or nearly identical to Plaintiff's products in design, dimensions, components, and surface finishes, marketed to the same Etsy customer base, at prices initially 30 to 50 percent below Plaintiff's prices and thereafter approximately 15 percent below Plaintiff's prices.

27. As a direct result of Defendants' sale of substantially similar competing products at materially lower prices, Plaintiff was forced to reduce the prices of many of its competing products by approximately 15% to 20%, and in some instances by greater amounts, in order to remain competitive and mitigate further loss of sales.

28. Plaintiff is informed and believes and thereon alleges that Defendants' ability to underprice Plaintiff is attributable, at least in part, to Defendants' substantially lower costs of acquiring and obtaining the components and materials used to manufacture their competing products. Defendants' lower acquisition costs, together with their avoidance of the substantial costs Plaintiff incurred in developing its Component Specifications, Finishing Process, supplier relationships, and products, have enabled Defendants to sell competing products at prices that Plaintiff cannot economically match without suffering substantial losses.

29. The products Defendants displayed and sold beginning in May 2024 cannot be manufactured without brass components of the special dimensions reflected in Plaintiff's Component Specifications and without finishing chemicals applied through processes like the Finishing Process. Defendants' first known purchase of finishing chemicals occurred on or about October 20, 2024, when Thinktech, through Ge, purchased chemicals from the same specialty chemical supplier that Plaintiff uses — approximately five months after Defendants' storefront was already displaying and selling finished products.

30. Plaintiff is informed and believes and thereon alleges that during the period from approximately May 2024 through October 2024, Defendants manufactured product samples and filled customer orders using brass components and finishing chemicals taken from Plaintiff.

31. Plaintiff is informed and believes and thereon alleges that Ge controlled and operated Thinktech and acted on its behalf in connection with the manufacture, marketing, and sale of the

competing products. Plaintiff is further informed and believes and thereon alleges that Thinktech acquired and used the benefits of the Trade Secrets through Ge with knowledge of the circumstances under which Ge obtained them.

32. Plaintiff is informed and believes and thereon alleges that Defendants have obtained and continue to obtain from sources outside the United States components and materials used to manufacture the competing products. The identity of Defendants' suppliers, the specifications provided to such suppliers, the quantities and types of components obtained, the manner in which such components and materials were acquired and transported into the United States, and Defendants' costs of obtaining such components and materials are presently within Defendants' knowledge and control.

33. Plaintiff is informed and believes and thereon alleges that the sources and methods by which Defendants obtained the components and materials used in their competing products, including the timing, quantities, specifications, and costs of such acquisitions, reflect Defendants' use of Plaintiff's Supplier Information, Component Specifications, and other wrongfully obtained resources rather than independent development and sourcing of the competing products.

34. Plaintiff is informed and believes and thereon alleges that Defendants did not independently develop the Component Specifications and Finishing Process used to manufacture their competing products. Plaintiff developed its specialized components, supplier relationships, and finishing processes through years of experimentation, testing, investment, and refinement. By contrast, within approximately six weeks after Ge's employment with Plaintiff ended, Defendants began offering substantially similar finished products using specialized components, dimensions, and finishes substantially similar to Plaintiff's products. The timing and circumstances of Defendants' acquisition of their components and materials, their rapid entry into the market, and the substantial similarity of their products support the inference that Defendants used Plaintiff's Trade Secrets and other wrongfully obtained resources rather than independently developing the competing products.

35. In the ordinary course of its business, Plaintiff incurs substantial costs in lawfully acquiring, transporting, and importing the specialized components and materials used in its products, in addition to the costs Plaintiff incurred in identifying suppliers, developing specifications, testing

components, and developing its manufacturing and finishing processes. These costs are reflected in Plaintiff's cost of goods and the prices at which Plaintiff can economically sell its products.

36. Plaintiff is informed and believes and thereon alleges that Defendants incur materially lower costs in acquiring, transporting, and obtaining the components and materials used in their competing products than Plaintiff incurs in acquiring and obtaining comparable components and materials. The precise sources, transactions, costs, shipping arrangements, importation arrangements, and other circumstances responsible for that cost differential are presently within Defendants' knowledge and control.

37. In June 2024, Plaintiff reported the theft of company property to the Anaheim Police Department.

38. Defendants' conduct is continuing. Defendants continue to operate the competing business, to use Plaintiff's Trade Secrets and the fruits of the property taken from Plaintiff, and to sell copied products to Plaintiff's customer base at undercutting prices.

39. From approximately May 2024 through the present, Plaintiff has generated approximately $7 million in gross sales. As a result of Defendants' sale of substantially similar competing products at materially lower prices, Plaintiff was forced to reduce the prices of many of its competing products by approximately 15% to 20%, and in some instances by greater amounts. Based on Plaintiff's sales during this period and the resulting price erosion and lost profits, Plaintiff estimates that it has sustained losses of at least $1,000,000. Plaintiff has also experienced increased levels of unsold inventory as Defendants have continued to offer substantially similar competing products at lower prices. Plaintiff's damages are continuing, and the full amount of such damages will be established according to proof.

40. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer substantial damages, including lost sales, price erosion, lost profits, increased inventory-related losses, and harm to its competitive position, in an amount presently estimated to exceed $1,000,000, with the full amount to be established according to proof.

## FIRST CAUSE OF ACTION

**VIOLATION OF DEFEND TRADE SECRETS ACT – 18 U.S.C. § 1836 ET SEQ.**

**(Against All Defendants)**

41. Plaintiff realleges and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

42. Plaintiff owns the Trade Secrets described above. The Trade Secrets constitute “trade secrets” within the meaning of 18 U.S.C. § 1839(3) because they consist of financial, business, scientific, technical, and/or economic information, including compilations, formulas, designs, methods, techniques, processes, and procedures; Plaintiff has taken reasonable measures to keep that information secret; and the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, persons who can obtain economic value from its disclosure or use.

43. The Trade Secrets are related to Plaintiff’s brass lighting products, which are offered for sale through the Etsy online marketplace and are used in, or intended for use in, interstate and/or foreign commerce.

44. Defendants misappropriated the Trade Secrets within the meaning of 18 U.S.C. § 1839(5). Defendants acquired the Trade Secrets by improper means, including theft and conduct breaching duties to maintain secrecy or limit use, and Defendants used and/or disclosed the Trade Secrets without Plaintiff’s express or implied consent while knowing or having reason to know that the Trade Secrets had been acquired by improper means or under circumstances giving rise to duties to maintain secrecy or limit use.

45. Specifically, and without limitation, Ge acquired and exploited Plaintiff’s confidential Supplier Information and other Trade Secrets while employed at Plaintiff’s facility despite restrictions on his access; while still employed, Ge used Supplier Information to place secret orders with Plaintiff’s supplier for his own competing benefit; and Defendants thereafter used the Trade Secrets to establish and operate a competing business selling products replicating Plaintiff’s dimensions, components, and finishes to the same customer base.

46. As a direct and proximate result of Defendants' misappropriation, Plaintiff has sustained actual loss, including lost sales, lost profits, and price erosion, of at least $1,000,000, and Defendants have been unjustly enriched by the misappropriation in amounts to be proven at trial and not addressed in computing Plaintiff's actual loss.

47. Defendants' misappropriation was and is willful and malicious. Among other things, Ge began exploiting the Trade Secrets in secret while still employed by Plaintiff, concealed his competing company while asking to return to Plaintiff's employment, and Defendants operate the competing storefront under a name that does not identify Ge. Plaintiff therefore seeks exemplary damages and reasonable attorney's fees to the extent authorized by 18 U.S.C. § 1836(b)(3).

48. Defendants' actual and threatened misappropriation is continuing. Plaintiff seeks injunctive and other appropriate relief under 18 U.S.C. § 1836(b)(3) to prevent actual or threatened misappropriation, subject to the limitations imposed by that statute and applicable California law.

## SECOND CAUSE OF ACTION

### MISAPPROPRIATION OF TRADE SECRETS – CALIFORNIA CIVIL CODE § 3426 ET SEQ.

**(Against All Defendants)**

49. Plaintiff realleges and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

50. Plaintiff owns the Trade Secrets described above. The Trade Secrets constitute trade secrets within the meaning of Civil Code § 3426.1, subdivision (d): they are information, including formulas, compilations, methods, techniques, and processes, that derive independent economic value from not being generally known, and they are the subject of efforts that are reasonable under the circumstances to maintain their secrecy, as alleged above.

51. Defendants misappropriated the Trade Secrets within the meaning of Civil Code § 3426.1, subdivisions (a) and (b). Defendants acquired the Trade Secrets by improper means, including theft and breach of a duty to maintain secrecy, and defendants have used and disclosed the Trade Secrets without Plaintiff's express or implied consent, knowing or having reason to know that the Trade Secrets were acquired by improper means and under circumstances giving rise to a duty to maintain their secrecy or limit their use.

52. Specifically, and without limitation: Ge acquired and exploited Plaintiff's confidential Supplier Information and other Trade Secrets while employed at Plaintiff's facility despite restrictions on his access; while still employed, Ge used the Supplier Information to place secret orders with Plaintiff's supplier for his own competing benefit; and Defendants thereafter used the Trade Secrets to establish and operate a competing business selling products replicating Plaintiff's designs, dimensions, components, and finishes to Plaintiff's customer base.

53. As a direct and proximate result of defendants' misappropriation, Plaintiff has sustained actual damages, including lost sales, lost profits, and price erosion, of at least $1,000,000, and Defendants have been unjustly enriched by their misappropriation in amounts to be proven at trial and not taken into account in computing Plaintiff's actual loss.

54. Defendants' misappropriation was and is willful and malicious. Among other things, Ge began exploiting the Trade Secrets in secret while still drawing wages from Plaintiff; Ge concealed his competing company while asking to return to Plaintiff's employment; and defendants operate their competing storefront under a name that conceals Ge's identity. Plaintiff is accordingly entitled to exemplary damages pursuant to Civil Code § 3426.3, subdivision (c), and reasonable attorney's fees pursuant to Civil Code § 3426.4.

55. Defendants' misappropriation is continuing and threatened to continue. Unless enjoined pursuant to Civil Code § 3426.2, defendants' actual and threatened misappropriation will continue to cause Plaintiff irreparable harm for which damages alone are an inadequate remedy.

## THIRD CAUSE OF ACTION

### CONVERSION

### (Against All Defendants)

56. Plaintiff realleges and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

57. This cause of action is based solely upon Defendants' wrongful taking and retention of Plaintiff's tangible personal property, and not upon the acquisition, use, or disclosure of any information.

58. At all relevant times, Plaintiff owned and had the right to possess the brass components and finishing chemicals maintained at Plaintiff's Anaheim facility, including the components and chemicals discovered missing in or about February and March 2024.

59. Plaintiff is informed and believes and thereon alleges that Defendants knowingly and intentionally took Plaintiff's brass components and finishing chemicals from Plaintiff's facility without Plaintiff's knowledge or consent, and thereafter exercised wrongful dominion and control over that property by retaining it, consuming it, and incorporating it into products manufactured and sold for defendants' own profit. Plaintiff's information and belief is based on the facts alleged above.

60. Plaintiff did not consent to Defendants' taking, retention, or use of the property, and Defendants have not returned the property or compensated Plaintiff for it.

61. As a direct and proximate result of Defendants' conversion, Plaintiff has been damaged in an amount to be proven at trial, including the value of the converted property and consequential damages proximately caused by the conversion, including the profits Defendants derived from products manufactured with the converted property.

62. Defendants' conduct as alleged herein was despicable and was carried on with a willful and conscious disregard of Plaintiff's rights, and with the intent to injure Plaintiff and to deprive Plaintiff of property, constituting malice, oppression, or fraud within the meaning of Civil Code § 3294, entitling Plaintiff to exemplary and punitive damages in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION

**BREACH OF DUTY OF LOYALTY**

**(Against Defendant Ge)**

63. Plaintiff realleges and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

64. During his employment, Ge owed Plaintiff a duty of undivided loyalty, including the statutory duties codified at Labor Code § 2860 — under which everything an employee acquires by virtue of his employment, except his compensation, belongs to the employer — and Labor Code § 2863, which requires an employee transacting similar business on his own account to give preference

to the business of the employer. Ge's duties arose from his employment and from the trust and access Plaintiff placed in him at its facility.

65. While still employed by Plaintiff, Ge breached his duty of loyalty by, among other things: secretly contacting Plaintiff's principal supplier and purchasing brass components for his own account and planned competing business; taking Plaintiff's brass components and finishing chemicals for his own use; preferring and advancing his own planned competing business over the business of his employer; and exploiting the access, knowledge, and resources entrusted to him for his own benefit and to Plaintiff's detriment.

66. As a direct and proximate result of Ge's breaches, Plaintiff has been damaged in an amount to be proven at trial, and Ge has been unjustly enriched, including through profits and benefits acquired by virtue of his employment that belong to Plaintiff, for which Plaintiff is entitled to restitution and disgorgement.

## FIFTH CAUSE OF ACTION

**UNFAIR COMPETITION – BUS. & PROF. CODE § 17200 ET SEQ.**

**(Against All Defendants)**

67. Plaintiff realleges and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

68. Defendants' conduct alleged herein constitutes unlawful and unfair business acts and practices within the meaning of Business and Professions Code § 17200. Such conduct includes, without limitation, Ge's breaches of his duty of loyalty while employed by Plaintiff, Defendants' wrongful acquisition and use of Plaintiff's tangible property, and Defendants' use of wrongfully obtained business resources and advantages to establish and operate a directly competing business.

69. Plaintiff is a "person" within the meaning of Business and Professions Code § 17204, and therefore has standing to bring this cause of action for injunctive relief, restitution, and other appropriate equitable relief.

70. Business and Professions Code § 17200, et seq. prohibits unlawful and unfair business practices.

71. Plaintiff is informed and believes and thereon alleges that Defendants have obtained components and materials used in their competing products at materially lower acquisition costs than those incurred by Plaintiff and have used that cost advantage, together with the costs Defendants avoided by exploiting Plaintiff's resources and development efforts, to sell substantially similar competing products at prices substantially below Plaintiff's prices.

72. Defendants' unlawful and unfair practices have enabled Defendants to build and operate a competing business using property, resources, and competitive advantages wrongfully obtained from Plaintiff and to divert sales from Plaintiff by offering substantially similar products at prices Plaintiff cannot economically match without sustaining substantial losses.

73. Defendants' conduct has caused and continues to cause Plaintiff economic injury, including lost sales, price erosion, loss of customers and market share, and the inability to compete on equal economic terms with Defendants.

74. Pursuant to Business and Professions Code § 17203, Plaintiff is entitled to an order enjoining defendants' unfair competition and requiring defendants to restore to Plaintiff all money or property acquired by means of such unfair competition.

## **PRAYER**

WHEREFORE, Plaintiff prays for judgment against Defendants and each of them as follows:

1. On the First Cause of Action: for actual-loss and unjust-enrichment damages, or other damages as authorized by 18 U.S.C. § 1836(b)(3); for exemplary damages for willful and malicious misappropriation; for injunctive and appropriate affirmative relief; and for reasonable attorney's fees to the extent authorized by 18 U.S.C. § 1836(b)(3);

2. On the Second Cause of Action: for actual damages and unjust enrichment in amounts to be proven at trial; for exemplary damages pursuant to Civil Code § 3426.3(c); for injunctive relief pursuant to Civil Code § 3426.2; and for reasonable attorney's fees pursuant to Civil Code § 3426.4;

3. On the Third Cause of Action: for compensatory and consequential damages in amounts to be proven at trial, and for exemplary and punitive damages pursuant to Civil Code § 3294;

4. On the Fourth Cause of Action: for damages in amounts to be proven at trial, and for restitution and disgorgement of all profits and benefits acquired by virtue of Ge's employment;

5. On the Fifth Cause of Action: for injunctive relief and restitution pursuant to Business and Professions Code § 17203;

6. On all Causes of Action: for costs of suit; for pre- and post-judgment interest as allowed by law; and for such other and further relief as the Court deems just and proper.

DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: August 26, 2026

FOCUS LAW

By: /s/ Tony T. Liu
Tony Liu, Esq.
J. John Oh, Esq.
Attorneys for Plaintiff,
ORANGE PRODUCT DESIGN, INC.

# PROOF OF SERVICE

I, the undersigned, declare:

That I am, and was at the time of service of the papers herein referred to, over the age of 18 years and not a party to the action; I am not a registered California process server; and I am employed in the County of Orange, State of California, in which county the within-mentioned service occurred. My business address is 4501 E. La Palma Ave., Suite 200, Anaheim, CA 92807.

On __________ __, **2026**, I caused the following document(s) to be served:

**COMPLAINT**

The manner of service was:

by mailing a copy thereof to the addressee named hereafter at the address listed below. I sealed each envelope and, with the postage thereon fully prepaid, I placed each for deposit in the United States Postal Service, at my business address shown above, following ordinary business practices; and/or

X by transmitting electronically the document(s) listed above to the person(s) at the email address(es) set forth below;

___ by overnight delivery of a copy thereof to each addressee named hereafter at the address(es) listed below. I sealed the envelope or package and placed it for collection at a designated station or other facility regularly maintained by such overnight delivery service or delivered to an authorized courier or driver authorized by such delivery service to receive documents with the delivery fees prepaid.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on ______ __, **2026**, at Anaheim, California.

/s/ J. John Oh
J. John Oh